# SUPERIOR COURT
#### OF THE

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5264

March 11, 2020

Jerry W. Hickman
P.O. Box 911
Laurel, DE 19956

Jillian A. Lazar, Esquire
Investor Protection Unit
Department of Justice
820 N. French Street
Wilmington, DE 19801

RE: *State of Delaware v. Jerry W. Hickman*, Def. ID# 1510010166 (R-1)[1]

DATE SUBMITTED: December 19, 2019

Dear Mr. Hickman and Ms. Lazar:

Defendant Jerry W. Hickman ("Hickman" or "defendant") has filed a motion for

---

[1] The addition of the (R-1) to the original defendant identification number is the numbering system the Superior Court employs in postconviction matters. I only note this fact because, in his Motion for Correction of Procedural Errors filed on December 19, 2019 (Docket Entry 108), defendant expresses concern about the assignment of a criminal action number to his pending motion.

1

postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61").[2] He repeatedly

[2] The applicable portions of the current version of this Rule provide:

\*\*\*

(d) *Preliminary consideration.* --

(1) *First postconviction motion.* -- A first postconviction motion shall be presented promptly to the judge who accepted a plea of guilty or nolo contendere or presided at trial in the proceedings leading to the judgment under attack. If the appropriate judge is unavailable to consider the motion, it shall be presented to another judge in accordance with the procedure of the court for assignment of its work. The judge shall promptly examine the motion and contents of the files relating to the judgment under attack.

(2) *Second or subsequent postconviction motions.* -- A second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted after a trial and the motion either:

(i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or

(ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.

(5) *Summary dismissal.* -- If it plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief, the judge may enter an order for its summary dismissal and cause the movant to be notified.

(e) *Appointment of counsel and withdrawal of counsel.* --

(1) *Timing of request for appointment of counsel.* Any indigent movant's request for appointment of counsel shall be filed contemporaneously with the movant's postconviction motion. Failure to file a contemporaneous request for appointment of counsel may be deemed a waiver of counsel.

(2) *First postconviction motions in specific cases.* -- The judge shall appoint counsel for an indigent movant's first timely postconviction motion and request for appointment of counsel if the motion seeks to set aside: (i) a judgment of conviction after a trial that has been affirmed by final order upon direct appellate review and is for a crime designated as a class A, B, or C felony under 11 Del. C. § 4205(b); (ii) a judgment of conviction after a trial that has been affirmed by final order upon direct appellate review and resulted in the imposition of a life sentence under 11 Del. C. § 4214; or (iii) a sentence of death.

\*\*\*

(4) *Other first postconviction motions.* -- The judge may appoint counsel for any other first postconviction motion only if the judge determines that: (i) the motion

is an indigent movant's first timely postconviction motion and request for appointment of counsel; (ii) the motion seeks to set aside a judgment of conviction after a trial that has been affirmed by final order upon direct appellate review; (iii) the motion sets forth a substantial claim that the movant received ineffective assistance of trial or appellate counsel; (iv) the motion sets forth a substantial claim that the movant is in custody in violation of the United States Constitution or the Delaware Constitution; (v) granting the motion would result in vacatur of the judgment of conviction for which the movant is in custody; and (vi) specific exceptional circumstances warrant the appointment of counsel.

(f) *State's response.* --

(1) *Order to respond.* -- If the motion is not summarily dismissed, the judge shall order the attorney general to file a response to the motion or to take such other action as the judge deems appropriate. Unless otherwise ordered, the response shall be filed within 30 days of service of the order to respond upon the state.

(2) *Content of response.* -- The response shall explain the factual and legal basis for the state's position on each ground for relief alleged in the motion in sufficient detail to enable the court to determine whether an evidentiary hearing is desirable or summary disposition of the motion is appropriate. If the motion contains inaccurate or incomplete information about prior proceedings, the response shall supply the correct information.

(3) *Movant's reply.* -- The movant may file a reply to the state's response within 30 days of service of the state's response upon the movant.

(g) *Expansion of record.* --

(1) *Direction for expansion.* -- The judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the motion.

(2) *Materials to be added.* -- The expanded record may include, without limitation, letters predating the filing of the motion, documents, exhibits, and contents of the file of an appeal or federal habeas corpus proceeding. If the motion alleges ineffective assistance of counsel, the judge may direct the lawyer who represented the movant to respond to the allegations. Affidavits may be submitted and considered as a part of the record.

\*\*\*

(3) *Summary disposition.* -- If it appears that an evidentiary hearing is not desirable, the judge shall make such disposition of the motion as justice dictates.

i\*\*

(i) *Bars to relief.* --

(1) *Time limitation.* -- A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the

3

has requested that counsel be appointed to represent him. He is not automatically entitled to appointment of counsel because he was not convicted of any Class A, B or C felonies.[3] Because, as seen below, he does not state a substantial claim of ineffective assistance of counsel nor does

---

Supreme Court of Delaware or by the United States Supreme Court.

(2) *Successive motions*. --

(i) No second or subsequent motion is permitted under this Rule unless that second or subsequent motion satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

(ii) Under paragraph (2) of subdivision (b) of this Rule, any first motion for relief under this rule and that first motion's amendments shall be deemed to have set forth all grounds for relief available to the movant. That a court of any other sovereign has stayed proceedings in that court for purpose of allowing a movant the opportunity to file a second or subsequent motion under this rule shall not provide a basis to avoid summary dismissal under this rule unless that second or subsequent motion satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

(3) *Procedural default*. -- Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows

(A) Cause for relief from the procedural default and

(B) Prejudice from violation of the movant's rights.

(4) *Former adjudication*. -- Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred.

(5) *Bars inapplicable*. -- The bars to relief in paragraphs (1), (2), (3), and (4) of this subdivision shall not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

(6) *Movant's response*. -- If ordered to do so, the movant shall explain on the form prescribed by the court why the motion for postconviction relief should not be dismissed or grounds alleged therein should not be barred.
\*\*\*

(m) *Definition*. -- A judgment of conviction is final for the purpose of this rule as follows:
\*\*\*

(2) If the defendant files a direct appeal ..., when the Supreme Court issues a mandate or order finally determining the case on direct review....

[3]*Thomas v. State*, 204 A.3d 842, 2019 WL 610820, \*2 (Del. Feb. 12, 2019) (TABLE).

4

he otherwise state a claim for relief, his requests for appointment of counsel are DENIED.[4]

Besides the motion for postconviction relief, which is Docket Entry 71, defendant has filed supplemental motions in violation of this Court's July 1, 2019 order declaring no further pleadings were to be filed. He filed pleadings on October 21, 2019 (Docket Entries 105, 106 and 107) as well as on December 19, 2019 (Docket Entry 108). These pleadings basically repeat the claims in his original motion and thus, I consider them when addressing defendant's claims. Because there are so many claims in the original motion and because trial and appellate counsel responded to the original motion, I use the numbered claims in Docket Entry 71 as the framework for my decision.

## I) FACTS AND PROCEDURAL POSTURE

On October 20, 2015, a warrant was issued for defendant's arrest on two counts of theft in the amount of $1,500.00 or greater where the victim was 62 years of age or older. On October 28, 2015, defendant was arrested on these two counts. His privately-retained counsel sought continuances of his preliminary hearing. On November 20, 2015, before his hearing was held, the State of Delaware ("the State") indicted defendant on forty-nine charges: twelve counts of theft, six counts of securities fraud, six counts of sale of unregistered securities, and twenty-five counts of forgery. A summons was issued pursuant to Superior Court Criminal Rule 9 on those charges and bond was set on those charges on December 22, 2015. Defendant, who was not represented at that time, requested a continuance of the arraignment until counsel was appointed to represent

---

[4]*Id.* ("A substantial claim of ineffective assistance of counsel is one that has some possibility of merit.").

5

him. Ultimately, Stephanie A. Tsantes, Esquire was appointed to represent him. Defendant was arraigned by filing a written plea form pursuant to Superior Court Criminal Rule 10.

The charges encompassed wrongful acts involving both individual investors to whom defendant sold stocks and several businesses that lent him money at high fees and rates based on future receivables of an ongoing company. In his postconviction submissions, defendant inserts many irrelevant facts and arguments, which distract from the fundamental facts of this case. Thus, a review his "factual" submissions would be wasteful. Instead, I focus on the pertinent facts that the Supreme Court succinctly set forth in its decision affirming the judgment of the Superior Court:[5]

> (2) In 2007, Hickman founded 911 Locator Systems, Inc., to develop a strobe light installed at the end of a driveway that would automatically turn on when a 911 call was placed from that location. To fund the start-up, Hickman offered and sold unregistered securities to investors and obtained loans. During fundraising, Hickman sent documents by email to investors and lenders representing that the company was profitable and growing.
>
> (3) In June 2015 an investor became suspicious about the accuracy of the representations being made, and filed a complaint with the Delaware Department of Securities Regulation. The State's Department of Justice Investor Protection Unit conducted an investigation that revealed that Hickman emailed to investors and lenders altered monthly bank statements and annual tax records, which portrayed the corporation as much more profitable than it was. FN 1 Specifically, Hickman sent two investors seven altered corporate tax returns for 2007 through 2013 that showed substantial profits, income, and activity, despite the reality that the company had little to no activity of the kind. FN 2 In an e-mail to Ironwood Finance, as part of a March 2015 loan application (footnote omitted), Hickman attached seven altered bank statements for each month from June to December 2014 (footnote omitted). And, in an email to Viking Finance, as part of a June 2015 loan application (footnote omitted), he attached three altered bank statements for each month from October to December 2014 (footnote omitted). The altered bank statements include inflated figures and invented transactions such as payments to attorneys, an engineer, and a manufacturer. FN 7 Ironwood's CEO explained at trial that to receive the kind of financing Hickman applied for, a

---

[5]*Hickman v. State*, 185 A.3d 693, 2018 WL 2069050, *1 (Del. May 2, 2018).

6

business must have good cash flow, regular deposits, and a sufficient average balance (footnote omitted). He testified that if accurate bank statements had been submitted, Hickman would not have received financing (footnote omitted).

> FN 1 App. to Opening Br. at 30–36 (altered corporate tax returns from 2007–2013); *id.* at 197–239 (altered bank statements from June 2014 to April 2015). The investigation also revealed that instead of using the funds received from his investors and lenders to grow the company, Hickman used the funds for personal expenses. App. to Answering Br. at 214–20 (Trial Tr., State v. Hickman, No. S1510010166, at 15–17, 20–21, 24–25 (Del. Super. Nov. 22, 2016) ); App. to Opening Br. at 274–93 (Trial Tr., at 18–37).

> FN 2 For example, the altered 2013 corporate tax return Hickman forwarded to investors listed $602,000 in gross receipts or sales, when the actual bank statements showed deposits of less than $10,000; $340,339 in cost of goods sold, when the actual bank statements showed spending of less than $10,000; and $77,546 in salaries and wages, when the actual bank statements showed no salaries or wages paid. App. to Opening Br. at 261–73 (Trial Tr., at 5–17).

> \*\*\*

> FN 7 *Id.* at 157–95 (actual bank statements); *id.* at 261–73 (Trial Tr., at 5–17). The forged bank statements Hickman included with his application showed monthly deposits ranging from about $61,000 to $108,000 a month, id. at 218–39, when the actual deposits in any one year totaled less than $10,000, not including the investment proceeds. App. to Answering Br. at 215 (Trial Tr., at 16).

In her affidavit submitted in connection with this pending motion, trial counsel explains the following steps she took to investigate defendant's innocence:

> With respect to investigating factual innocence, Trial Counsel retained the services of Geoff Langdon and, together with him, reviewed all bank records and reviewed statements made with projections and figures about income and growth. Based on that review, trial counsel did not have evidence to support a factual innocence claim or to present an expert witness to counter the State's proffered bank records and expert testimony.

7

\*\*\* Finally, the evidence clearly showed that money procured based on applications containing false bank records went into Hickman's bank account and was promptly spent by Hickman.[6]

Before trial, defense counsel convinced the State to downgrade a felony theft count that alleged one of the victims was an impaired adult. Trial counsel also successfully moved the trial court to dismiss all charges pertaining to transactions that occurred beyond the statute of limitations.

Defendant moved for a judgment of acquittal on six counts, which the Superior Court granted in part and denied in part. The Court dismissed two counts of forgery in the third degree but denied the motion as to two counts of theft and two counts of forgery in the third degree.

In the end, left standing were convictions on the following charges: six counts of securities fraud, six counts of offer or sale of unregistered securities, six counts of theft greater than $1,500, one count of theft under $1,500, seven counts of forgery in the second degree, and ten counts of forgery in the third degree. The evidence against defendant overwhelmingly established his guilt on these charges.

Defendant was sentenced to a period of incarceration, followed by probation. He currently is serving the probationary portion of his sentence.

On appeal, an attorney from the Office of Defense Services was assigned to represent defendant. However, because this attorney's father suffered a severe injury, that original attorney could not work on the appeal. Consequently, Bernard J. O'Donnell, Esquire took over the representation of defendant on appeal.

One issue was raised on appeal; Hickman argued the Superior Court erred by allowing the

---

[6]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 46-47.

8

State to pursue a separate count of forgery for each altered document instead of one count for each email that contained a number of documents. The argument was that pursuing a separate count of forgery for each document attached to an email violated the multiplicity doctrine of the Double Jeopardy clause. The Supreme Court rejected that argument and affirmed the judgment of the Superior Court.

The Supreme Court mandate was dated May 18, 2018.[7]

## II) DISCUSSION

Defendant timely filed this motion for postconviction relief on December 27, 2018.[8]

Defendant has listed fifty-three grounds for relief. He included a couple of other grounds in these October and December, 2019 submissions. I first dispose of the grounds which are procedurally barred. I then will address the ineffective assistance of counsel claims.

### 1) Procedurally Barred Claims

Before a court will examine the merits of a claim, it determines whether the claim is procedurally barred; i.e, it will not consider the merits of a claim if the claim is procedurally barred.[9] If it is procedurally barred, the only way the claim will be examined is if a defendant establishes an exception exists which overcomes the procedural bar. I repeat portions of Rule 61(i) which govern this procedural review:

---

[7]Docket Entry 64.

[8]Docket Entry 71.

[9]*Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

9

(3) *Procedural default.* Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows

    (A) Cause for relief from the procedural default and

    (B) Prejudice from violation of the movant's rights.

    \*\*\*

(5) *Bars inapplicable.* -- The bars to relief in paragraphs (1), (2), (3), and (4) of this subdivision shall not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

The pertinent requirements of Rule 61(d)(2)(i) and (2)(ii), are:

[T]the motion either:

    (i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or

    (ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction ... invalid.

The applicable procedural bar is Rule 61(i)(3). The following claims were not raised in the proceedings leading to the judgment of conviction:

**Ground 1** - Documents were seized without a warrant.

**Ground 15** - Prosecutorial misconduct.

**Ground 50** - The trial court erred in charging the jury before the closing arguments were given.

**Ground 52** - The trial court improperly allowed amendments to the indictment.

*Brady*[10] **violation claim**[11] - Defendant argues the State failed to provide the defense, court and jury with documents.

---

[10]*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

[11]Defendant asserts *Brady* claims in his October 21 and December 19, 2019 filings.

**Motion to vacate convictions** - In his October and December, 2019, filings, defendant moves to vacate his convictions, arguing there was no fraud in this case.

## Grounds 1, 15, 50, 52, *Brady* violation claim and motion to vacate

Neither arguments on these issues nor objections to these matters were raised during trial or on appeal. Consequently, these claims are barred 1) unless defendant establishes cause for relief from the procedural default and prejudice from violation of his rights,[12] or 2) unless he establishes by these claims either that the court lacked jurisdiction or he satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule,[13] i.e, he i) pleads with particularity that new evidence exists that creates a strong inference that defendant is actually innocent in fact of the acts underlying the charges of which he was convicted; or (ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to his case and renders the conviction invalid.

Defendant has not established, or even attempted to establish, any of the exceptions to the procedural bars. Thus, Grounds 1(seizure of documents without a search warrant); 15 (prosecutorial misconduct), 50 (the trial court erred in charging the jury before the closing arguments were given), 52 (the trial court improperly allowed amendments to the indictment), *Brady* violations, and motion to vacate because there was no fraud are procedurally barred and consequently, denied. Also, with regard to the *Brady* arguments, as best the Court can tell, the

---

[12]Rule 61(i)(3).

[13]Rule 61(i)(5).

documents to which defendant refers were documents which defendant prepared on the business's behalf. That factual scenario does not give rise to a *Brady* violation.

**2) Procedurally Allowed Ineffective Assistance of Counsel Claims (Grounds 2-14; 16-21; 22-49; 51; 53)**

### The State's Position

The State, in responding to defendant's motion, notes the following. Trial counsel convinced the prosecutor to extend a plea offer recommending no jail time. If defendant had taken that advice, he most likely would not have served any Level 5 time. Appellate counsel raised the only legally tenable non-frivolous issue from a trial that turned on factual issues and credibility before the jury.

### Consideration of Claims

Many of defendant's ineffective assistance of counsel claims are repetitious and are addressed together where possible.

There are no bars to the ineffective assistance of counsel claims. Those claims properly are raised for the first time in a motion for postconviction relief "because these claims generally

cannot be raised at trial or on direct appeal."[14]

The standard applied to an ineffective assistance of counsel claim is stringent. As the Delaware Supreme Court recently stated in *Asbury v. State*:[15]

> In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (i) defense counsel's performance fell below an objective standard of reasonableness; and (ii) there is a reasonable probability that but for the deficient performance the result of the proceeding would have been different. FN 5 [The defendant] ... must state and substantiate concrete allegations of actual prejudice. FN 6 [He] ... must also overcome a strong presumption that counsel's performance was professionally reasonable. FN 7
>
> > FN 5 *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
> >
> > FN 6 *Peters v. State*, 2015 WL 1280628, at *2 (Del. Mar. 20, 2015) (*citing Younger v. State*, 580 A.2d 552, 556 (Del. 1990)).
> >
> > FN 7 *Id.; Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

To expound:

> A reasonable probability requires more than a showing "merely that the conduct 'could have or might have or it is possible that [it would have]' led to a different result." "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Footnotes and citations omitted).[16]

And, to emphasize, a claim that is conclusory or which lacks concrete allegations to substantiate the claim shall be dismissed.[17]

"A decision made in pursuit of reasonable trial strategy does not constitute ineffective

---

[14]*Malloy v. State*, 16 A.3d 938, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011) (citing *Duross v. State*, 494 A.2d 1265, 1267 (Del. 1985).

[15]219 A.3d 994, 2019 WL 4696781, * 2 (Del. Sept. 25, 2019) (TABLE).

[16]*Bussey v. State*, 2020 WL 708135, * 2 (Del. Feb. 11, 2020).

[17]*Younger v. State*, 580 A.2d at 555, 556.

assistance of counsel."[18] The Supreme Court recently explained in *Nastatos v. State*[19] the following with regard to counsel's strategic choices:

> "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Further, "counsel need not advance every argument the defendant wishes to raise, regardless of merit." (Footnotes and citations omitted).

Finally, the Court employs the same *Strickland* standard when evaluating a claim that appellate counsel was ineffective.[20]

## Review of ineffective assistance of counsel claims

Defendant's trial counsel was Stephanie Tsantes, Esquire. She has submitted an affidavit wherein she addresses each and every complaint against her in detail. Defendant disputes her explanations generally; however, he does not provide any specific or detailed fact to support his general claims of ineffectiveness. I accept Ms. Tsantes' affidavit and where there is a dispute between what she says and what defendant says, I accept her statements over his because her statements are specific while his are general.

In response to a general assertion of ineffective assistance of counsel which appears in Ground 22, trial counsel provides a general response which sums up the case and the defense. She explains as follows:

---

[18] *Ruffin v. State*, 205 A.3d 822, 2019 WL 719038, *2 (Del. Feb. 19, 2019).

[19] 2019 WL 7041891, *6 (Del. Dec. 20, 2019).

[20] *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

14

Trial counsel was faced with defending a Unregistered Securities Fraud and Theft case in the face of multiple statements by Jerry Hickman in written form (both in documents boasting about growth of the company, emails, and Facebook) which had no basis in fact. There was no evidence to support that a patent had been obtained or was in process. There was no evidence to support any growth claims. There was no evidence to support most of what was in written form regarding this company that Hickman was selling shares of stock and continuing to place statements in the public world that simply were not supported by facts. Trial counsel vigorously challenged evidence and cross examined witnesses. The only charges that counsel did not vigorously challenge in cross examination or otherwise were the Unregistered Securities charges. Each stock certificate indicated it was not registered. Trial counsel's research indicated that under Delaware Law, the securities were required to be registered – even though exempt under Federal Law. While counsel is required to zealously advocate for her client, counsel may not make a false statement of fact or law. P.R.C. 3.3.(a)(1).[21]

Defendant's allegations and trial counsel's responses are more fully developed below.

**Ground 1**

In ground one, defendant lists various bullet points which appear to assert various violations involving the seizure of documents. Defendant's arguments are not all that clear in some areas. However, it appears he is arguing that trial counsel was ineffective for failing to challenge the subpoena of bank records related to the investigation of defendant or 911 Locator Systems, Inc.

Trial counsel admits she did not challenge the subpoena of bank records because the authority to issue such subpoenas is broad and there was no legal basis for making such a challenge. Trial counsel's decision not to pursue a meritless motion was a strategic one; thus, trial counsel was not ineffective.[22] Defendant fails to establish the first *Strickland* prong; thus,

---

[21]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 34.

[22]*Nastatos v. State, supra.*

15

this claim fails.

**Grounds 2 and 53**

Defendant argues, with regards to the security violations, that the SEC regulations did not require that the securities he sold be registered.

The violations charged were of the Delaware Securities Act. As noted earlier, trial counsel admits she did not argue that the securities were exempt from registration under the Federal Securities Act. Trial counsel more fully develops her explanation for why she did not argue the stocks sold were not a public offering and were exempt from registration under Regulation D of the Securities Act as follows. Trial counsel's legal research showed that Securities and Exchange Commission ("SEC") regulations D, Rules 504-506 required that stocks be sold in accordance with a state law that requires the public filing and delivery to investors of a substantive disclosure document. She discussed these results with defendant. She notified him that he must provide materials in his possession from his "business advisor" that showed he was exempt from State and Federal requirements. She asked defendant to provide her with any information he might have from any lawyer, business advisor or informed consultant that established he was legally exempt from the Delaware Securities Law. He did not produce such.

Trial counsel also retained Geoff Langdon, an accountant. Mr. Langdon agreed defendant was required to register his securities under the Delaware Securities Act.

At a March 21, 2016 meeting, defendant informed counsel he never retained any lawyer to inform him whether or not to comply with State or Federal laws. In addition, the prospectus he put out, which indicated two Delaware law firms represented the company, was not true; he

16

never even talked with anyone in those firms. Finally, the only advice he received was from a person named Don Mann in Pennsylvania whom he met through CEO Space about how to set up his business.

Trial counsel sent defendant a letter on September 8, 2016 wherein she concluded he would be convicted of at least the six counts of Sale of Unregistered Securities. She also orally told him on numerous occasions that he would be convicted on at least the six counts of sale of unregistered securities.

There was, and is, no basis for defendant's contention he did not have to register his securities. In his October and December, 2019, submissions, he has listed some statutes and names in support of his contention he did not have to register his securities. These lists do not establish that he was legally exempt from the Delaware Securities Law. Instead, defendant needed to submit an affidavit from an expert which opined he was exempt from registration requirements. He has not produced such in connection with his pending Rule 61 motion. He has failed to show that he did not violate Delaware's Securities Law. I reject defendant's conclusory assertions and accept trial counsel's representation that defendant never provided any materials from any expert that showed he was exempt from the Delaware statutory requirements.

Trial counsel's tactical decision not to argue the securities were exempt was appropriate as she had no basis for arguing an exemption existed. Defendant did not provide her with witnesses who would testify they so advised him. Defendant has failed to establish the law exempted him from registering the securities. In conclusion, defendant has not established that trial counsel was ineffective. These claims fail.

17

**Ground 3**

Defendant argues, basically, that trial counsel did not spend enough time investigating his case or interviewing witnesses.

In her affidavit, trial counsel itemizes her work on this case in extreme detail.[23] The itemizations establish trial counsel thoroughly and extensively reviewed defendant's case, researched legal issues, and met with others and defendant. I detail below some, but not all, of the work trial counsel undertook on this case.

The trial date was extended so that trial counsel could review discovery the State provided. She retained the accountant, Geoff Langdon. She consulted with two attorneys who previously had represented defendant in the matter. She brought in another attorney in the Public Defender's Office to participate in the multiple interviews she had with defendant. She reviewed materials and information regarding defendant and his business.

She convinced the prosecutor to downgrade a charge regarding one of the victims that originally alleged she was an impaired adult. She retained an expert and successfully convinced the prosecutor to offer a plea of probation only; i.e., there would be no jail time for defendant to serve after she showed defendant was not living a luxurious lifestyle from the proceeds of his crimes.

She made numerous objections before, during and after trial. She was able to have the forty-five counts reduced to thirty-six counts.

After trial, she developed mitigating evidence, particularly with regard to defendant's health, to help in his sentencing.

---

[23]Affidavit of Stephanie Tsantes (Docket Entry 77) at 7-14.

18

Trial counsel explains that despite previous requests that defendant provide witness information, defendant did not provide any names until his case review on September 7, 2016. He gave her the names of two possible witnesses, but did not provide any contact information or the nature of the testimony. Thereafter, she warned him by letter that if she did not receive contact information on three potential witnesses by October 3, 2016, the ability to subpoena them would be jeopardized. She also demanded that defendant explain what he thought their testimony might cover. She further explained that the complex procedure involved with obtaining any out of state witness precluded the ability to compel those witnesses' presence. Several times thereafter, trial counsel sent defendant letters demanding he provide witness information.

There were two more case reviews after the September 7, 2016 "final" case review. Each time, defendant rejected the plea offers. At the November 9, 2016 case review, trial counsel put on the record that defendant never responded to her requests for contact information on potential witnesses. She gave him four subpoenas with witnesses' names and towns and told him she could not serve them with so little information. However, she did tell him he could try to get the witnesses to come to court voluntarily.

On November 15, 2016, trial counsel met with defendant at the courthouse. He denied that he had retained the two law firms named in his documents. She considered unbelievable his claim he had paid a Park Avenue firm $250.00 for a consultation. When she asked him to what a potential witness, John Rittenhouse, would testify, he told her he had no idea. She told him Mr. Rittenhouse would not be of help to him. She had interviewed Mr. Rittenhouse; she then spoke with and/or emailed corporate counsel for the Edward Jones investment firm where Mr. Rittenhouse worked. Thereafter, after consulting with defendant, she excused Mr. Rittenhouse

19

from his subpoena. The decision on whether to call a witness is a tactical one.[24]

I conclude that trial counsel was well-prepared for this case; she spent a substantial amount of time on it. She made tactical decisions with regard to witnesses. Defendant has not demonstrated that trial counsel's performance fell below an objective standard of reasonableness. In addition, defendant fails to meet the prejudice prong. He does not detail how more time spent with him would have resulted in a different outcome of his case. He also does not name any witness trial counsel could have interviewed who would have provided information or testimony that would have changed the outcome of his case.

This claim fails under the *Strickland* standard.

**Ground 4**

In this ground, defendant asserts he provided counsel with numerous documents that she did not review. Trial counsel disputes the time frames when various documents were provided. She also disputes the nature of the documents given to her. She explains that she reviewed the documents defendant gave her. Defendant does not explain how the outcome of this case would have been different had trial counsel reviewed all of the documents he claims he gave her. He does not establish prejudice, and the claim fails.

Defendant also argues that trial counsel did not review or know the relevant law. His merely arguing that he did not need to register the securities does not make that the law. Thus, defendant has not established the first *Strickland* prong. Furthermore, defendant has presented nothing to support his contentions that he did not need to register the securities. Because

---

[24]*Outten v. State*, 720 A.2d 547, 557 (Del. 1998).

defendant cannot establish the law was something other than what trial counsel knew it to be, defendant cannot establish the *Strickland* prejudice prong.

This claim fails.

**Ground 5**

Defendant argues that trial counsel accepted the State's version of events and if she had undertaken her own investigation, she would have uncovered a completely different story. Defendant fails to establish trial counsel's conduct was not objectively reasonable. Trial counsel conducted her own review of materials, retained an expert, included other counsel in her review and consideration of the matter, and discussed matters with defendant. Furthermore, defendant never specifies what the different story was. He fails to provide supported details of information that would have established his innocence. The evidence against defendant was overwhelming. Defendant fails to meet either *Strickland* prong.

This claim fails.

**Ground 6**

Defendant claims that trial counsel failed to issue subpoenas or file pretrial motions. He argues that had she done so, she would have addressed the following issues: he was not arrested or advised of charges; he was not given *Miranda*[25] rights; he never was taken before a Judge or into a courtroom; he was held at Sussex Correctional Institution for over four days without any phone calls.

---

[25]384 U.S. 436 (1966).

Trial counsel addresses the failure to subpoena witnesses in general. She agrees she did not subpoena anyone. She explains in detail about the witness situation. Basically, defendant failed to provide her with sufficient information to allow her to subpoena the witnesses in a timely manner. Because defendant did not provide her with anything more than names of three people immediately before trial, she gave him subpoenas for those persons whose names he gave her at the last moment and directed him to try to get them to the witnesses.

The first witness was John Rittenhouse. Mr. Rittenhouse was not happy to have been subpoenaed. An interview with that witness established his testimony would not have been helpful to defendant. Trial counsel discussed this matter with defendant, and a decision was made to excuse Mr. Rittenhouse from the subpoena.

The second witness was Robert Adams, who appeared at trial. Mr. Allen testified at trial.

The third witness lived in Huntsville, Alabama. Defendant did not provide sufficient information to trial counsel to allow for the timely issuance of an out-of-state subpoena. It is trial counsel's recollection that defendant talked to this witness but he was unable to travel to Delaware.

I conclude that trial counsel's failure to subpoena witnesses in this case was reasonable.

In any case, defendant does not show how any testimony these witnesses might have given would have changed the outcome of his case. He has failed to establish prejudice with regard to these three witnesses.

Defendant also argues in this ground that trial counsel should have subpoenaed witnesses and made pretrial motions with regards to his arguments that he was not arrested, he was not taken before a Justice of the Peace Court, he was not given his *Miranda* warnings, and he was

22

held without being able to make any phone calls.

The following events occurred when the case was initiated. On October 20, 2015, a warrant was issued for defendant's arrest on two counts of theft in the amount of $1,500.00 or greater where the victim was 62 years of age or older. On October 28, 2015, defendant was arrested on these two counts. He was taken before a Justice of the Peace; he was arraigned and bond was set. Defendant was scheduled for a preliminary hearing. At that time, Vincent H. Vickers, II, Esquire represented defendant. Mr. Vickers obtained a continuance of the preliminary hearing. Another attorney stepped in and obtained another continuance of the preliminary hearing. Before the preliminary hearing, the State indicted defendant. Specifically, on November 20, 2015, the State indicted defendant on forty-nine charges: twelve counts of theft, six counts of securities fraud, six counts of sale of unregistered securities, and twenty-five counts of forgery. A summons was issued pursuant to Superior Court Criminal Rule 9 on those charges and, while in Superior Court on December 22, 2015, bond was set on those charges. Defendant, who was not represented at that time, requested a continuance of the arraignment until counsel was appointed to represent him. Ultimately, Stephanie A. Tsantes, Esquire was appointed to represent him. Defendant thereafter was arraigned by filing a written plea form pursuant to Superior Court Criminal Rule 10.

Defendant's arguments he was not arrested and was not seen by a Judge is factually incorrect. Defendant does not understand the procedures involved with his case even though trial counsel and the Court have explained them to him. Trial counsel had no basis for filing any motions or subpoenaing any documents or witnesses with regard to these meritless arguments

23

attacking the initial proceedings. An attorney is not required to pursue a meritless argument.[26]

I turn to defendant's *Miranda* arguments. *Miranda* provides for the suppression of statements a suspect might make while in police custody if *Miranda* rights are not given.[27] In this case, there were no statements made which the State attempted to enter into evidence; thus, whether *Miranda* rights were given is irrelevant. Trial counsel had no basis for filing any pretrial motion on this ground or issuing any subpoena on this ground. Again, an attorney is not required to pursue a meritless argument.[28]

As to the final argument, that he could not make a phone call while incarcerated, defendant fails to establish what constitutional or statutory right was violated. There is no merit to this argument and trial counsel had no basis for filing any pretrial motion on this ground or issuing any subpoena on this ground.[29]

This ground fails for the reasons set forth above.

**Ground 7**

Defendant argues trial counsel was ineffective for failing to file motions arguing he never was arrested and that the bond conditions violated his First Amendment Rights.

As explained above, there is no merit in the argument that defendant was not arrested.

---

[26] *Nastatos v. State*, 2019 WL 704189 at *6.

[27] *Ross v. State*, 550 A.2d 35, 1988 WL 113305, *2 (Del. Sept. 28, 1988) (TABLE).

[28] *Nastatos v. State, supra.*

[29] *Id.*

24

Trial counsel acted reasonably in refusing to file this completely meritless motion.[30] This claim fails.

As to the bond conditions which prohibited him from using social media or having contact with the victims or investors in his business, defendant has failed to meet the prejudice prong of *Strickland*. He has advanced nothing to show that had this bond condition been removed, the outcome of his trial would have been different.

This claim fails.

**Grounds 8 and 9**

Defendant argues trial counsel was ineffective for failing to litigate issues regarding the statute of limitations as to the charges in the original arrest warrant. Trial counsel admits such. By the time she entered into representation of defendant, the State had indicted defendant and the State no longer was pursuing those original two charges. There was no basis for trial counsel to litigate this issue.[31] Trial counsel's actions were reasonable.[32] This claim fails.

Defendant also faults trial counsel for failing to file a motion based upon the arresting officer's contention that one of the victims was over 62 years of age when she was not nor was she infirm. Trial counsel's affidavit responds to this contention in detail:

> Counsel did not challenge Lester Johnson's affidavit in the arrest warrant regarding Ms. Wheatley being 62 years of age or older. My read of the arrest

---

[30] *Id.*

[31] Trial counsel did move for a dismissal of some of the indicted charges based upon statute of limitations issues and the motion was granted.

[32] *Nastatos v. State, supra.*

25

warrant allegation is that Hickman's original charge for Ms. Wheately pursuant to 11 Del. C. §841( c)(2) which contains two alternate prongs. The theory as originally charged was that Vivian Wheately, "who is 62 years of age or older, **or** an infirm adult or a disabled person" and the value of the theft is greater than $1,500.00. Det. Johnson's affidavit of probable cause clearly indicates that "she is a disabled person and has been since 1991 due to Muscular Dystrophy." The last sentence in the affidavit of probable cause asks for one charge for a senior involving Stephen White who is a senior and "one count from a disabled person" being Vivian Wheatley. The subsequent grand jury indictment charged allegations related to Ms. Wheatley as an "adult who is impaired" as that term is defined in 31 Del. C. §3902(2). Counsel did not file any Motions to challenge Ms. Wheatley's impairment as defined under the Code, because I negotiated with D.A.G. Gregory Strong prior to trial to downgrade this charge and just pursue it as a felony Theft. Based on my communication with D.A.G. Strong on 8/22/16 questioning whether Ms. Wheately is an "impaired adult", I received the following email from him on 8/31/16 which said in part:

> Ms. Wheatley has MS. She will testify about her condition. We do not have medical records regarding her condition. We will agree not [ ] pursue the statutory aggravator for the theft charge based on her disability for purpose[s] of the attached plea or if we wind up having a trial.

At trial, the State submitted an amended charge with respect to Ms. Wheatley that did not include the allegation that she was impaired. *** Trial counsel saw no good purpose in cross examining Detective Johnson or Ms. Wheatley's supposed infirmity because I successfully convinced the State to agree to not pursue the enhancement regarding that charge. FN 15  From a trial strategy perspective, I did not object to the limited testimony regarding her condition because it did not impact the downgraded charge and I did not want to highlight her disability to the jury and have the jury feel any more sympathy towards her. ***

Trial counsel cross-examined Ms. Wheatley on her sophistication in business and as an investor. ***

Trial counsel has no basis to believe that perjured testimony was offered in evidence during his trial or his investigation.

> FN 15 The effect of the downgrade in the charge was to change it from a Class F felony to a Class G felony and to limit the restitution responsibility to money lost during the statute of limitations period.

I find that trial counsel's strategy was reasonable. In the alternative, defendant has failed

to establish the prejudice prong.

Defendant fails to establish both the *Strickland* prongs and thus, the claims fail.

**Grounds 10 and 11**

Defendant generally argues, without any specificity, that trial counsel failed to investigate and review defense documents. The claim is denied because it is conclusory and lacks concrete allegations to substantiate the claim.[33] However, despite the generality of the argument, trial counsel addresses it as explained below.

Trial counsel reviewed all documents defendant provided her. These documents did contain some receipts that, with testimony from Hickman,[34] could have provided an explanation for some legitimate business efforts of defendant on behalf of 911 Locator Systems, Inc. On the other hand, many of these documents showed expenses for things not related to 911 Locator Systems, Inc. They showed that defendant used the account as his own personal piggy bank and not for business expenses. Furthermore, none of the documents supported any business claims defendant made in either prospectus information to potential clients or in Facebook posts regarding the profitability of the business. Finally, many of the records were incomplete or only partial portions of original documents. There would be "tremendous downside with trying to offer these records into evidence as they would have required a witness to verify their authenticity as well as how they related to the business. Most of the records did not speak for

---

[33] *Younger v. State, supra.*

[34] Mr. Hickman did not testify at trial.

27

themselves."[35] She notes defendant had problems answering her questions about questionable business expenses and there was no evidence that any accountant or bookkeeper had been retained by defendant or 911 Locator Systems, Inc.

Defendant does reference Exhibit 16 with regard to these two grounds. This Exhibit lists numerous names. Trial Counsel never saw that document until she received it from the Court in connection with this Rule 61 motion. She notes that if she had received a list from a client requesting she subpoena elected government officials, including the Governor, she would have discussed the matter with him and memorialized the matter in a letter. Since that did not happen, she knows defendant did not provide that document to her.

I accept trial counsel's representations and find trial counsel's conduct was reasonable.

Even if defendant provided Exhibit 16 to trial counsel, this claim fails. Defendant merely provides a list of names and generally argues trial counsel was ineffective. He does not set forth in any manner to what any witnesses would have testified nor does he identify what the documents would have established so that the outcome of the trial would have been different. Thus, defendant has failed to establish the *Strickland* prejudice prong.

These two grounds fail for the reasons set forth above.


**Ground 12**

This ground, which again references Exhibit 16, asserts that trial counsel failed to interview witnesses. Trial counsel provides detailed information, summarized below, answering this vague allegation.

---

[35]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 26.

She did not interview the State's witnesses; she did, however, review all information produced regarding those witnesses and did cross-examine them. Exhibit 16 was not produced to her before trial. Even if it had been produced, it would not have mattered. The evidence showed payments out of the business's account for a dating service, doctor's appointments, personal rent, personal utility bills, cigarettes, donuts and snacks. Trial counsel had a professional CPA review records and it was the CPA's opinion there was nothing to support an exculpatory defense. Actual revenue versus revenue projections defendant put into the public domain did not align. Expenditures were supporting defendant's lifestyle, albeit not an extravagant lifestyle.

Trial counsel's trial preparation was reasonable and this claim fails on the first *Strickland* prong. Furthermore, because defendant does not explain, let alone submit in any supported format, what any witness would have said that would have resulted in the outcome of the proceedings being different, he fails to meet *Strickland's* prejudice prong.

This claim fails for the reasons set forth above.


**Ground 13**

Defendant argues trial counsel failed to conduct an investigation of an alternate suspect on certain charges. Trial counsel believes that the charges to which defendant references are Counts 26-36 of the final indictment; these counts address Ironwood Finance, Viking Funding Group, LLC, and certain County Bank records.

The Court understands defendant's claim here only because trial counsel explains what he is arguing. Absent trial counsel's help, the Court would not be able to address this argument because it is so unclear. I quote from trial counsel's affidavit in order to set forth a full picture of

29

the argument:

> A historical context for this allegation would be helpful to the Court. At some point during Hickman's efforts on behalf of 911 Locator Systems, he was getting few, if any, additional investors. Hickman procured, or tried to procure money, through a vehicle similar to pay-day lending or title lending. He found businesses that provided money to small businesses based on future receivables. For instance, Kevin Donohue testified as the CEO of Ironwood Finance that online brokers would bring him potential customers for a small commission. Ironwood Finance would then provide the small business with money under an agreement of preapproved debits from the business account. For instance, Ironwood provided Hickman with $13,605.00 and the total amount Hickman was required to pay back was $20,930.00.
>
> While the trial testimony is that Ironwood Finance received its customers through online brokers, Mr. Donohue testified that he had specific conversations with Hickman regarding his company and what he was trying to do. The trial testimony also showed that once Ironwood Finance funded their deal, the money was transferred to Hickman's account and the money was immediately spent.
>
> Despite overwhelming evidence that Hickman benefitted from the work of these online brokers by obtaining money and quickly spending that money, he contended this that online broker somehow was the culprit. While trial counsel cross examined multiple witnesses regarding the online brokers, the evidence at trial was that the money only went into Hickman's bank account and he promptly spent the money.
>
> Trial counsel was aware of Hickman's claim that Jarrett Goldstein had a criminal record and may have had a hand in funding these deals. However, there was no evidence to suggest that Goldstein received anything other than a commission which was always paid to fund a deal. The lending deals that were successfully procured all led to Hickman receiving money and then promptly spending the money.
>
> Hickman declined to testify at trial as to the many allegations he claims in this ground.[36]

First, trial counsel's conduct with regard to these charges was reasonable and defendant

fails to establish the first *Strickland* prong. Furthermore, defendant never establishes what an

attack on Jarrett Goldstein would have accomplished with regard to his case. A review of the

transcript shows that defendant acquired the monies from the businesses and used the monies.

---

[36]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 28-29.

Defendant fails to establish the prejudice prong in that he fails to show how the outcome of the trial would have been different if his red herring issues had been investigated.

This claim fails.

**Ground 14**

Defendant argues trial counsel would not communicate with him and the Court refused to appoint another attorney for him.

Trial counsel's affidavit clearly shows that this claim lacks merit. She did communicate with him many times during the course of the litigation against him. She provided effective assistance of counsel. Because she was providing effective representation, this Court refused to appoint another attorney. There was no basis for appointing another attorney.

Trial counsel's communications with defendant were more than reasonable. This claim fails.

**Ground 16**

Defendant argues trial counsel failed to conduct a sufficient investigation and she had a reckless disregard for defendant's interest.

Trial counsel's affidavit clearly shows that this claim lacks merit. She did conduct a sufficient investigation. She provided effective assistance of counsel. This claim fails.

**Ground 17**

Defendant argues that trial counsel failed to investigate witnesses and trial counsel failed

31

to locate witnesses who would have impacted the truthfulness of the State's witnesses. He claims some of the witnesses changed their stories. He does not, however, name the witnesses who could have impacted the truthfulness of the State's witnesses nor does he detail how the State's witnesses changed their stories.

Trial counsel explains that she could not locate any witnesses who might have impacted the truthfulness of the State's witnesses and that she vigorously cross-examined the State's witnesses.

Trial counsel's representation was reasonable. Furthermore, defendant has failed to establish the prejudice prong. This claim fails.


**Ground 18**

Defendant claims trial counsel failed to interview and subpoena witnesses on a list he gave her. Although he does not reference Exhibit #16 in this ground, it appears he is actually referencing this list. This is a more general argument of arguments previously made and addressed above.

As noted earlier, I accept trial counsel's explanation that defendant never provided her with the list of witnesses on Exhibit #16. In addressing Ground 6, the Court reviewed the facts surrounding the possible witnesses which defendant did give trial counsel.

Again, I conclude that trial counsel's representation was reasonable. I further conclude that defendant has failed to establish the prejudice prong of *Strickland.*

This claim fails.

32

**Grounds 19 and 20**

Defendant claims trial counsel failed to discover medical evidence about Vivian Wheatley that would have established that she was not infirm, incapacitated or disabled, as was originally charged. He argues trial counsel was ineffective for failing to obtain a continuance in order to obtain the materials which could have been used to impeach her. He further alleges trial counsel failed to cross-examine this witness about inconsistent statements regarding her medical condition made to an investigator.

I set forth below trial counsel's response:

> It is admitted that trial counsel did not cross examine Ms. Wheatley regarding her medical condition. Trial Counsel also did not subpoena or request protected medical records of Mrs. Wheatley. FN 18   Prior to trial, counsel successfully negotiated with the State to remove the prong of the original charge for Ms. Wheatley about whether she was an "impaired adult" as defined by statute. This successful negotiation followed Trial Counsel's phone conversation with DAG Strong on 8/22/16 about whether or not Wheatley was actually an "impaired" adult as defined by the statute.
>
> As a trial strategy, there was no good reason to cross examine Mr. [sic] Wheatley regarding her limited testimony about having been diagnosed with a rare type of muscular dystrophy. (**Exhibit F - trial transcript volume B, pages 29-30**). She testified to working as a mail carrier and then working as a licensed real estate agent. (Emphasis in original).[37]
>
> > FN 18 Unless voluntarily provided by the State, obtaining Wheatley's medical records would have been very difficult – especially since she lived in another State and the State had removed that charge as an element of the offense.

Trial counsel also states: "[T]here was no reason to highlight Wheatley's medical condition to the jury, since that element had been removed from the offense before trial."[38]

---

[37]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 32-33.

[38]*Id.* at 33.

How to cross-examine a witness is a tactical decision.[39] Defendant's burden here was to show what information would have been obtained if counsel had proceeded differently and how that would have changed the outcome of the trial.[40] Trial counsel's strategic decisions with regard to Ms. Wheatley's medical condition were reasonable. Defendant fails to establish the first *Strickland* prong. In addition, defendant has failed to establish prejudice in light of the overwhelming evidence against him. Thus, he has failed to establish the second *Strickland* prong.

Additionally in Ground 20, defendant alleges there were two witnesses whose testimony would have impeached Wheatley's claims and testimony. He does not name those two witnesses or detail to what they would have testified. Defendant fails to establish the prejudice prong of *Strickland*.[41]

The claims in Grounds 19 and 20 fail for the reasons set forth above.


**Ground 21**

This claim is more specific than the other claims regarding Wheatley and I set it forth in full below. Defendant alleges:

> Trial counsels [sic] failure to discover exculpatory medical and for failing to properly cross examine about inconsistent statements and descrepancies [sic] in their trial testimony constitutes ineffective assistance of counsel.
> Trial counsels [sic] failure to investigate the States [sic] key witness about her alleged medical condition would have proven them false. Her statements about her stock subscriptions after meeting with her financial advisor, her statements about showing property to the defendant and statements about her real estate

---

[39] *Outten v. State*, 720 A.2d at 557.

[40] *Id.*

[41] *Younger v. State*, 580 A.2d at 555, 556.

34

license going stagnant and expiring.

The investigation would have revealed and proven with documentation that it was three (3) years after she claimed to show property to the Defendant. It would have also prove she was still listing/showing/selling property over two (2) years after she testified her license had expired. One of these properties she listed and sold belonged to her, she was the owner as well as the real estate agent for its sale.[42]

Trial counsel's response, in addition to the previously examined responses, was as

follows:

Again, there was no reason to highlight Ms. Wheatley's medical condition to the jury, since that element had been removed from the offense before trial. Trial Counsel did cross examine Ms. Wheatley on various properties she showed to Hickman. **(Exhibit J - trial transcript volume B, pages 104-108).** Counsel cross examined Ms. Wheatley on whether she consulted with a financial advisor prior to making her investments. **(Exhibit K - trial transcript volume B, pages 109-111).** Trial Counsel also cross examined Ms. Wheatley as to whether she was a sophisticated investor and through her experience as a realtor knew about contracts as well as the vagaries of any market. **(Exhibit L - trial transcript volume B, page 111).**
Trial Counsel did not have an independent witness to testify to the dates of Ms. Wheatley's real estate license or the dates property was shown. Certainly, if Hickman had testified, an area of direct examination would have focused on the property viewed to relocate his business. Multiple witnesses testified that Hickman was trying to find another property and this did not seem to be an area of dispute at the trial. (Emphasis in original).[43]

Again, trial counsel's trial strategy was reasonable. Furthermore, defendant has failed to

establish the prejudice prong.

This claim fails on both *Strickland* prongs.

---

[42]Defendant's Motion for Postconviction Relief (Docket Entry 71) at 22-23.

[43]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 33-34.

**Ground 22**

This claim merely argues in a general manner that trial counsel was ineffective. Claims such as this, that lack any specificity and that are vague and conclusory, fail.[44]

**Ground 23**

Defendant asserts trial counsel failed to use defense documents against witnesses. He does not, however, identify the documents. Because this claim is so vague, trial counsel is unable to respond to it and the Court is unable to consider it; thus, it fails.[45]

**Ground 24**

Defendant asserts that trial counsel had a duty to investigate leads affecting the credibility of witnesses.

He generally asserts that the leads would have shown Wheatley was testifying falsely. The assertion in this claim is too vague to be considered.[46] However, to the extent defendant might be making the same argument he made earlier regarding Wheatley, the claim is denied for the same reasons as it was denied when addressed earlier in this decision.

Defendant does raise issues regarding Tobias Paquette ("Paquette").

Trial counsel explains as follows. She had copies of documents related to Paquette. She and defendant discussed this fact. Trial Counsel was under no duty to prove the State's case. She

---

[44] *Younger v. State*, 580 A.2d at 555, 556.

[45] *Id.*

[46] *Id.*

36

states:

> Trial Counsel specifically remembers having to ask for a break from trial to confer with Hickman regarding not producing those documents for cross examination. **(Exhibit M – trial transcript volume C, page 143).** Trial Counsel made a strategic decision to not offer those documents during cross examination. Rather, Trial Counsel questioned Mr. Paquette regarding what the check he wrote was for and what it represented. **(Exhibit N – trial transcript volume C, pages 148-151).** Paquette testified he did not know what the check represented, didn't know what, if any, percentage of Hickman's company he purchased. At the close of the State's case, Trial Counsel made a motion for judgment [sic] of acquittal of many charges, including those of Mr. Paquette. **(Exhibit O – trial transcript volume E, pages 104-107),** please note the transcription error refers to Mr. Beckwith but counts 10-12 deal with Mr. Paquette]. This motion was denied with respect to those counts. In closing arguments, Trial Counsel argued that Paquette didn't know what the check was for or that it represented stock shares. Counsel argued for an acquittal on those charges. **(Exhibit P – trial transcript volume G, pages 129-130).** (Emphasis in original). [47]

This claim fails; trial counsel's strategy was reasonable. There was no ineffective assistance of counsel.

**Ground 25**

In this count, defendant generally asserts trial counsel failed to investigate known facts, consult him about those facts and move for a suppression of evidence. A claim such as this that is conclusory and that lacks concrete allegations to substantiate it must be dismissed.[48]

He also asserts: "Trial Counsel had documentation and knowledge of illegally obtained evidence and known false testimony to secure that evidence but refused to file motions for

---

[47]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 35-36.

[48]*Younger v. State, supra.*

37

suppression or move for an evidentiary hearing."[49]

In response thereto, trial counsel explains she is unaware of any illegally-obtained evidence in connection with this case. I accept her version because it is specific. Defendant never states what evidence was illegally obtained and his assertion fails. Furthermore, because trial counsel was unaware of any such evidence, she had no basis for filing a motion to suppress.

This claim fails because it is conclusory.[50]

**Ground 26**

Defendant argues trial counsel failed to conduct any meaningful adversarial challenge by failing to properly cross-examine the State's witnesses and to object to evidence known to be false. This claim is merely a general argument expressing unhappiness with how trial counsel conducted the defense. Again, the claim is too vague to consider.[51] In any case, my review of the transcripts of the proceedings establishes that trial counsel conducted a meaningful adversarial challenge. Her representation was effective. Defendant fails to establish the first *Strickland* prong.

**Ground 27**

In this claim, defendant generally states trial counsel was ineffective for failing to correct testimony known to be false or misleading and, allegedly had documents which would have

---

[49]Defendant's Motion for Postconviction Relief (Docket Entry 71) at 25.

[50]*Younger v. State, supra.*

[51]*Id.*

38

supported such an objection. This argument, also, is too vague to consider.[52] The claim fails.

**Ground 28**

In this claim, defendant asserts in a conclusory fashion that trial counsel failed to prepare for trial, had no focused defense strategy, failed to call any defense witnesses, and failed to oppose the State's case. The Court does not consider this vague claim.[53] This claim fails.

**Ground 29**

In this count, defendant argues that because, over twelve years ago, trial counsel had worked for the attorney general's office, she was disloyal to him and partial to the State. His only specific example supporting this argument is the contention that she refused to accept jurors who had a higher education on the ground "they could easily be swayed by the prosecution when in fact the opposite is true."[54] This example is unsupported and frankly, illogical.

Trial counsel denies any bias.

There is nothing in the record to support defendant's contention that trial counsel was partial to the State and was disloyal to him. This claim fails.

**Ground 30**

Again, defendant vaguely argues that trial counsel failed to subject the State's case to an

---

[52]*Id.*

[53]*Id.*

[54]Defendant's Motion for Postconviction Relief (Docket Entry 71) at 27.

adversarial process. He argues she failed to prepare for trial, she failed to call defense witnesses defendant wanted called, and she failed to oppose the government's case. The claims are too vague to consider.[55]

Defendant also argues that trial counsel was unfamiliar with federal or state security laws.

Trial counsel admits she did not know that area of the law before she began defending defendant. The Court notes that very few attorneys are familiar with that area of the law. However, once trial counsel began defending defendant, she researched the law and became familiar with the laws applying to defendant's case and the stock of 911 Locator Systems, Inc. A review of the file shows that trial counsel was familiar with the law during her representation of defendant. Furthermore, defendant has failed to submit an affidavit from any expert that would establish he was innocent. Trial counsel was not ineffective and defendant has failed to establish the first *Strickland* prong. This claim fails.


**Ground 31**

Again, defendant sets forth a general argument that trial counsel was ineffective for failing to do basic research, review the testimony of key witnesses, including defendant's, and be familiar with readily available documents necessary to understand her client's case. He then asserts that she was given several thousand documents which she refused to use or bring to court. He also contends she would have been able to prove that the State's witnesses were using perjured testimony with the prosecutor's knowledge.

Again, this claim fails because the assertions are general without any supporting

---

[55] *Younger v. State, supra.*

40

specifics.[56]

Despite their vague generality, trial counsel attempts to address these claims. She denies these general claims and refers the Court to previous answers in her affidavit, which have been discussed earlier in this decision. She states she is unaware of any prior testimony of any witness or defendant regarding this case. She reviewed all documents and materials from the State and the defendant before trial. She explains that she did have documents defendant provided in her possession at the courthouse. She states:

> Nothing in those documents helped counter many of the State's claims, including that the product had a patent or the patent was in process. Nothing in those documents helped support various claims made about 911 Locator Systems by email, Facebook or other public statements made by Hickman.[57]

I accept trial counsel's representation. Defendant's lack of specificity and failure to identify a single fact which would support his vague claims render his assertions unsubstantiated. Defendant has failed to establish the first prong of *Strickland*. This claim fails.

**Ground 32**

Defendant asserts that trial counsel failed to consult with him during trial and she did not have a working knowledge of the documentary evidence. He asserts there were documents which would have impeached Tobias Paquette.

Trial counsel generally denies the claims. Furthermore, she explains as follows:

Trial Counsel consulted with Hickman throughout the trial. At various times, Trial Counsel asked for a break during trial to consult with Hickman regarding the

---

[56]*Id.*

[57]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 39.

evidence in the case. As an example, Trial Counsel and Hickman spoke at length regarding the defense possession of stock certificates and other material regarding witness Mr. Paquette. Trial Counsel made a strategic decision to not offer those as evidence during cross examination, as is discussed in counsel's answer to Ground 24 above. It appears that Hickman is making the same allegations here as in Ground 24 and Trial Counsel reincorporates her full answer here to this repeated claim.

Trial Counsel denies that she did not bring defense documents to court. She had all defense documents on a thumb drive and her laptop was with her at all times during the trial. During a pre-trial conference, Trial Counsel sought permission from the Court to be able to have access to her laptop and that request was granted. (**Exhibit C - Superior Court docket entry #27).** (Emphasis in original).[58]

Trial counsel's representation was reasonable. Furthermore, defendant fails to establish the prejudice prong; he fails to identify the document(s) to which he is generally refers and he fails to specify how the outcome would have been different had trial counsel used it/them.

For the foregoing reasons, this claim fails.

## Ground 33

This claim merely sets forth a general argument that trial counsel was ineffective. Claims such as this, that are conclusory and that lack concrete allegations to substantiate them, fail.[59]

## Ground 34

Defendant states the following:

Trial Counsels [sic] lack of Pre-trial preparations and investigation required a repremand [sic]
This trial counsel refused to properly defend her client and abandoned her duty of

---

[58]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 39-40.

[59]*Younger v. State, supra.*

42

loyalty to her client and should require a repremand [sic].

The record disproves defendant's contention that trial counsel did not properly defend her client. In any case, defendant's requested relief here, a reprimand, is not available in a postconviction motion and this request is denied as inappropriate in a Rule 61 motion.

**Ground 35**

In this claim, defendant argues:

> Trial counsel's failure to establish facts thru [sic] defendants [sic] expert witnesses which were favorable and would have cast reasonable doubt about respecting [sic] guilt.
> Trial counsel had over 40 witnesses to chose in addition to thousands of defense documents at her disposal, not only failed but refused to use them in defense of her client.

This claim fails because it is conclusory and lacks concrete allegations to substantiate it.[60] Defendant does not name a single witness nor detail what testimony any witness would have presented which would have caused reasonable doubt about defendant's guilt. Defendant does not identify a single document nor does he detail what any document would have established to cause reasonable doubt about defendant's guilt. This claim fails for vagueness.

Despite the vagueness of the assertion, trial counsel responds to it. She establishes that the expert witnesses she interviewed would not have helped defendant's case.

Geoff Langdon, the accountant, explained that information from defendant as well as actual financial records did not support Hickman's claims about growth and sales. Instead, the records showed that money went into defendant's accounts and he promptly initiated repayments

---

[60] *Id.*

43

on the loan as well as spent the money he received from the lender. As she explains, "In blunt terms, Mr. Langdon informed me that 'none of the data I have seen suggests innocence unless you buy into a conspiracy of a significant magnitude.'"[61] Mr. Langdon agreed with trial counsel's assessment that defendant would have had a difficult time as a witness because defendant never directly answered a question or defendant would dodge difficult confrontations. Trial counsel explains she did not think any other forensic accountant would have come to a different conclusion or would been more helpful because the bank records disputed defendant's public assertions.

In conclusion, this claim fails because it is too vague and conclusory to consider.[62]

**Grounds 36, 37 and 38**

These grounds address the subject of defendant not testifying.

In Ground 36, defendant asserts trial counsel advised him not to testify allegedly because of his health problems and because the State would try to rattle him. When he said that if that happened, he would invoke his Fifth Amendment right not to testify, trial counsel told him that he could not do that but must answer all the questions and that if he invoked the Fifth Amendment, then he would be held in contempt of court and would go to jail. He maintains this advice was erroneous and constitutes ineffective assistance of counsel.

In Ground 37, defendant asserts trial counsel instructed him not to testify "based on an

---

[61]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 41.

[62]*Younger v. State, supra.*

44

inappropriate conflict for his well being;"[63] she told him that with all the witnesses and documents they had he may confuse the jury; and he could not plead the Fifth Amendment on questions he did not want to answer. Again, he asserts that she told him not to testify because the prosecutor would "attempt to make him crack"[64] and he could have medical issues.

In Ground 38, defendant asserts trial counsel refused to let him testify and threatened him that if he did and tried to plead the Fifth Amendment, he would go to jail. She also told him his testimony was not necessary because there were plenty of witnesses and evidence. He further asserts that after she told the Court defendant would not testify, she refused to present any witnesses.

Trial counsel addresses these contentions in her affidavit:

With respect to Hickman's decision not to testify, and advice given regarding whether or not he testify, Hickman made the decision to not testify in his case. ***

In discussing with him his constitutional right to testify in his defense, Hickman seemed to believe that he could just get on the witness stand and allocute and not be subject to cross examination. Part of our discussions pointed out that when he met with myself, Mr. Robinson, or Mr. Langdon, he did not do well when confronted with difficult information, and many times did not answer a direct question with a direct answer.

Near the close of the State's case, Judge Brady initiated a discussion outside of the presence of the jury with Hickman to discuss his right to testify in his defense. **(Exhibit R- trial transcript volume D, pages 81-83).** Judge Brady informed Hickman that this right was guaranteed to him in the U.S. Constitution. **(Exhibit R - trial transcript volume D, page 81).** She told him that if he testified he would have to answer questions from the State's attorney as well as his own attorney. **(Exhibit R - trial transcript volume D page 82).**

When it became clear to me that Hickman was not accepting my opinion that he could not testify without being subject to cross examination, I arranged for an *ex-parte* [sic] discussion with Judge Brady and the client. **(Exhibit S- trial**

---

[63]Defendant's Motion for Postconviction Relief (Docket Entry 71) at 31.

[64]*Id.*

**transcript volume D page 149).** This occurred on November 21, 2016 after the trial proceedings were done for the day. The ex parte was done with a court reporter and that part of the record is sealed. My recollection is that I shared with the Court that Hickman did not accept my understanding of the law that he would be required to submit to cross-examination if he chose to testify. Judge Brady again told the client what she had told him earlier on the record about if he testified he would have to answer questions from both his attorney as well as the State.

On November 22, 2016, I had multiple conversations with Hickman regarding his right to testify in this case. I informed Hickman that the Court would also do a colloquy with him regarding his right to testify. Prior to this colloquy, I told Hickman that if he needed more time to consider his decision to testify or not to ask the judge for more time. The Court conducted a colloquy outside the presence of the jury. Judge Brady informed Hickman once again about his right to testify or not as guaranteed by the Constitution. Hickman indicated he would not testify in his defense. **(Exhibit T - trial transcript volume E, pages 80-82).**

Hickman claims that counsel advised him to not testify because of his recent health problems. I do not recall a specific health discussion regarding his decision to testify or not testify. I specifically recall discussing his health when I recommended he take guilty plea in a deal to Level 2 probation and in part said that this meant he would have his health concerns taken care of by the doctors of his choosing rather than prison medical care. I am certain that we discussed how he did not do well for me when I asked him hard questions and that it would be even worse with a prosecutor conducting a cross-examination.

The bulk of my discussions with Hickman regarding his right to testify or not testify centered on his inability to directly answer questions as detailed in other responses. While Hickman could have detailed many efforts he made on behalf of his company and some of his spending, he would have had many problems on cross examination. There were multiple false statements in documents provided to or sent to investors in his companies. Every time Hickman was confronted with a fact not favorable to his case, he could not directly answer hard questions or he would claim there was a conspiracy against him.

We discussed that some things (such as his prior bankruptcy) which I had kept out of the case in chief would also be fair game for cross examination by the State. We also discussed possible questions regarding his prior felony conviction as well as his prior perjury convictions. While I was aware that there was some age to those convictions (footnote omitted) and I would have certainly challenged their use in cross-examination, most of his prior record involved crimes of falsity or dishonesty.

I do not have a specific recollection of telling the client he would face criminal contempt charges if he refused to answer the prosecutor's questions. I do not know if this discussion took place in the ex parte portion of the record that has been sealed. I would have told him that the Court would instruct the jury to

disregard his direct testimony if he refused to answer questions on cross-examination. (Emphasis in original).[65]

Trial counsel denies using defendant's medical condition as a reason for defendant not to testify. She informed him of his rights to testify or not. She did not refuse to allow him to testify. She did not threaten him with jail. She and the Court had multiple discussions with him about this right to testify.

This Court has reviewed the pertinent portions of the transcripts. Defendant has misrepresented the facts. As trial counsel noted, the Court reviewed with defendant his rights to testify several times. As an example, in Ground 38, defendant asserts that trial counsel told the Court that he would not testify. The exact exchange appears below:

> THE COURT: All right then. Mr. Hickman, we previously had a discussion whether or not you would testify in this matter. And I will recall for you that you have the right to testify or not to testify in any criminal matter and it is given to you personally by the United States Constitution. While you may rely upon your attorney's advice, she has exercised a great deal of judgment and expertise in the course of this trial and preparation for it, ultimately, the decision about whether to testify or not is yours. I told you if you take the stand, you must answer questions not only from your own attorney, but also from the State. And I told you that I don't know your criminal history, but if you had any matters involving fraud, deceit, or dishonesty or any felony-level conviction it would be admissible not to prove- - potentially, depending the time and the offense - - not to prove you are a criminal, but only to challenge your credibility and whether you should be believed in whatever you do and say on the stand. I told you if you don't take the stand, the jury will be instructed that they cannot consider that fact in any way in deciding your guilt or innocence.
> Have you had sufficient time to talk with your attorney about this decision?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Have you made a decision about whether to testify or not?
>
> THE DEFENDANT: Yes.

---

[65] Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 42-44.

47

THE COURT: What is your decision?

THE DEFENDANT: No, I will not.

THE COURT: You will not?

THE DEFENDANT: Yes.[66]

Defendant's rights about testifying clearly were explained to him several times by the Court. Defendant's contentions are belied by the record. He was aware of his rights to testify and he chose not to testify. Furthermore, defendant has failed to set forth any specific facts to show prejudice, either; i.e., he has not detailed how if he had testified, the outcome would have been different.

Defendant's claims regarding his voluntary and intelligent decision not to testify fail to establish a claim for ineffective assistance of counsel.

**Ground 39**

This is a restatement of the previously discussed claims: that trial counsel "refused" to let him testify, that she failed to call forty witnesses on his behalf, and that she failed to submit all necessary documents. The Court has addressed these arguments previously and will not readdress them.

**Ground 40**

In this two–part claim, defendant asserts 1) that trial counsel refused to investigate evidence of defendant's factual innocence, and 2) that she failed to follow up on his offer to pay

---

[66]Trans. of November 22, 2016 Proceedings at E-80-82.

48

for a forensic analysis of his computers that would have proven that the documents did not come from his computer.

In response, trial counsel explains the following:

> With respect to investigating factual innocence, Trial Counsel retained the services of Geoff Langdon and, together with him, reviewed all bank records and reviewed statement made with projections and figures about income and growth. Based on that review, trial counsel did not have evidence to support a factual innocence claim or to present an expert witness to counter the State's proffered bank records and expert testimony.
>
> With respect to not obtaining a forensic review of any computer, Trial Counsel admits that this was not done. Since the State did not do a search warrant and seize computers, I had significant concerns that a search of a computer that was produced by Hickman to Trial Counsel might not be complete in that I had no real way of knowing how many computers he had access to and used from the inception of his company until the end of his charged conduct. Based on documents provided to Trial Counsel by Hickman, it was clear that he or someone working with him possessed computer skills. Finally, the evidence clearly showed that money procured based on applications containing false bank records went into Hickman's bank account and was promptly spent by Hickman.[67]

These complaints attack trial counsel's trial strategy. It appears that all evidence to which trial counsel had access established defendant's guilt. Her trial strategy was reasonable.

Defendant has failed to establish the first *Strickland* prong. This claim fails.

**Ground 41**

This claim merely sets forth a general argument that trial counsel was ineffective. This ground is denied because it is conclusory and lacks any specificity.[68]

---

[67]Affidavit of Stephanie A. Tsantes (Docket Entry 77) at 46-47.

[68]*Younger v. State, supra.*

49

**Ground 46**

This claim also merely argues, generally, that trial counsel and appellate counsel were ineffective. Claims that are vague and conclusory fail.[69]

**Ground 47**

As is the case with the preceding claims, this claim only sets forth a general argument that trial counsel and appellate counsel were ineffective. Claims that are vague and conclusory fail.[70]

**Ground 48**

This claim merely sets forth a general argument that appellate counsel was ineffective. Claims that are vague and conclusory fail.[71]

**Remaining Grounds that allege Ineffectiveness of Appellate Counsel**

Besides the general, conclusory arguments mentioned above that appellate counsel was ineffective, defendant made several specific claims against appellate counsel. Defendant's version of the facts is not accurate. I set forth the pertinent facts regarding appellate counsel.

Initially, Santino Ceccotti, Esquire, of the Office of Defense Services ("ODS") represented defendant on appeal. Mr. Ceccotti had spoken to defendant by videophone regarding defendant's appeal. Soon before the opening brief on appeal was due, Mr. Cecotti's father

---

[69] *Id.*

[70] *Id.*

[71] *Id.*

suffered a catastrophic spinal injury and Mr. Cecotti no longer was available to work on defendant's appeal. Bernard J. O'Donnell, Esquire ("appellate counsel") then took over the appeal. Appellate counsel did not speak to appellate about his case; he spent the limited time he had reviewing the record, which is extensive, and preparing the brief.

The issue on appeal that appellate counsel raised was that defendant's forgery convictions were multiplicitous and violated double jeopardy. Appellate counsel explains:

> The issue that I raised as plain error on appeal was the only legally tenable non-frivolous issue that I saw as evident from the record of an almost entirely fact and credibility driven trial determined by the jury on the evidence presented at trial. Although the issue raised on appeal was a technical legal issue raised on plain error grounds which, even if successful, would have provided minimal, if any practical benefit to Mr. Hickman, I believed that I was obligated to raise and argue it rather than file a non-merit brief under Supreme Court Rule 26( c).[72]

I now turn to the specific claims against appellate counsel.

**Grounds 42 and 45**

Defendant maintains that the scenario set forth above resulted in the Supreme Court's refusal to consider the merits of defendant's case, which constituted ineffective assistance of counsel and a presumption of prejudice.

Defendant thought he had a good basis for a reversal after talking with his first attorney. However, in his submissions, defendant fails to set forth one single issue which he believes would have resulted in a reversal of the proceedings below. These claims fail for lack of specificity.[73]

---

[72]Affidavit of Bernard J. O'Donnell (Docket Entry 82) at ¶ 2.

[73]*Younger v. State, supra.*

51

In any case, appellate counsel reviewed the file and transcripts and raised the only issue which he thought existed. Appellate counsel was not ineffective and defendant has failed to establish any prejudice.

These claims fail for the foregoing reasons.

**Grounds 43 and 44**

Defendant argues that appellate counsel was ineffective because he failed to raise ineffective assistance of counsel on the appeal and because he failed to raise issues based on trial counsel's "defective performance." The Delaware Supreme Court generally will not hear ineffective assistance of counsel claims on direct appeal.[74] Appellate counsel was not ineffective for not raising issues asserting ineffectiveness of trial counsel on direct appeal. Defendant fails to establish the first *Strickland* prong, and these claims fails.

**Ground 49**

Defendant states:

Appellate counsels [sic] failure to timely notify petitioner that his appeal had been denied and to advise him of his right to file for discretionary review which prevented petitioner from pursuing his right for a discretionary review and constituted ineffective assistance of counsel.[75]

The Supreme Court's decision was dated May 2, 2018. Appellate counsel sent defendant a letter dated May 2, 2018 at his then current Department of Correction address which enclosed

---

[74]*Malloy v. State*, 16 A.3d 938, 2011 WL 1135107, *2 (Del. Mar. 28, 2011) (citing *Duross v. State*, 494 A.2d 1265, 1267 (Del. 1985).

[75]Defendant's Motion for Postconviction Relief (Docket Entry 71) at 36.

52

the decision and which informed him of his right to pursue certiorari review in the United States Supreme Court and postconviction review in the Superior Court.

Trial counsel was not ineffective. This claim fails.

### III) CONCLUSION

For the foregoing reasons, defendant's motion for postconviction relief is DENIED.

Because defendant does not state a substantial claim of ineffective assistance of counsel nor does he otherwise state a claim for relief, his requests for appointment of counsel are DENIED.

**IT IS SO ORDERED.**

Very truly yours,

Richard F. Stokes

cc: Prothonotary's Office
Stephanie A. Tsantes, Esquire
Bernard J. O'Donnell, Esquire